Carroll L. HESS, Appellant,

v.

O'DELL MOTORS, Appellee,

v.

INTERNAL REVENUE SERVICE OF the UNITED STATES of America, Appellee.

No. 80–1983.

United States Court of Appeals, Tenth Circuit.

Nov. 16, 1982.

James R. McCarty, Casper, Wyo., for appellant.

David F. Evans, Cheyenne, Wyo. (with James P. Horiskey, Cheyenne, Wyo., on brief) of Horiskey, Bagley & Hickey, Cheyenne, Wyo., for appellee O'Dell Motors.

Terry L. Fredricks, Tax Division, Dept. of Justice, Washington, D.C. (with John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup and Gary R. Allen, Tax Division, Washington, D.C. and Charles E. Graves, U.S. Atty., Cheyenne, Wyo., on brief), for appellee Internal Revenue Service.

Before SETH, Chief Judge, and HOLLOWAY and McKAY, Circuit Judges.

McKAY, Circuit Judge.

The plaintiff, Carroll L. Hess, appeals from a district court decision that denied his claim to a security interest in a truck purchased by his son and seized by the Internal Revenue Service. We affirm the lower court judgment.

Carroll Hess is the father of Byron E. Hess, a truck driver who resides in Wyoming. In 1976, Byron Hess purchased a Kenworth truck-tractor. Shortly thereafter, he obtained a Wyoming certificate of title that listed him as the owner of the truck and the Western National Bank of Casper as a lienholder. Byron Hess leased the truck to a Washington company while retaining possession of the vehicle as an owner-operator. Apparently at the request of the company, he transferred certification of title to Washington. However, he continued to operate the truck from Wyoming, accepting dispatches and transporting loads for the Washington company.

During this period, the Internal Revenue Service (IRS) was investigating Byron Hess' tax liabilities. On March 14, 1977, the IRS assessed a federal tax deficiency against him in the amount of $1,665.02. Apparently, Byron Hess did not receive immediate notice of this assessment.

On May 12, 1977, Carroll Hess paid to the Western National Bank of Casper the $14,-938.20 that Byron Hess owed on the truck, thereby extinguishing the bank's lien. At the time of this transaction, the father and son executed neither a promissory note nor a mortgage; nor did they change the Washington certificate of title to indicate the creation of a new lien against the truck.

Some time in the middle of July 1977, the IRS advised Byron Hess that it had assessed a federal tax deficiency against him and that it intended to seize his property if the assessed amount was not paid. On July 28, 1977, Byron Hess obtained a new Washington certificate of title, listing Carroll Hess as the holder of a lien against the truck. On July 30, 1977, Byron Hess gave Carroll Hess a promissory note for $18,500, and on August 1, 1977, Byron Hess executed a chattel mortgage purportedly granting his father a security interest in the truck. That same day, Byron Hess wrote to the IRS, stating that he had received a "Notice of Seizure," that he did not owe the tax assessed by the IRS, and that he would not surrender any property without a trial by jury.

On August 22, 1977, the IRS filed a Notice of Federal Tax Lien in Natrona County, Wyoming, Byron Hess' place of residence. Some time later, the IRS sent Carroll Hess a letter to ascertain whether he had a secured interest in the truck. Carroll Hess did not respond. On April 19, 1978, Byron Hess obtained a new Washington certificate of title transferring ownership of the truck from Byron Hess to Hess Family Enterprises, a common-law family trust. On June 6, 1978, the IRS seized the truck, and on June 29, 1978, O'Dell Motors purchased it by submitting a bid in response to a notification of a tax sale.

Carroll Hess brought this action on August 14, 1978, seeking a declaration from a Wyoming court that he had a secured interest that entitled him to recover his son's truck. The defendant, O'Dell Motors, filed a third party complaint against the IRS, and the IRS removed the suit to federal district court. The district court, sitting without a jury, held that O'Dell Motors obtained the truck free and clear of any claims of Carroll E. Hess, expressing its doubt that the father truly made a secured loan to his son. It also stated that the father failed to comply with the perfection

requirements of Wyoming law and that, in any event, any security interest that may have been created was extinguished under principles of waiver and estoppel. We interpret the district court opinion as relying on each of these reasons as an independent ground for denying the plaintiff recovery of the truck.

On appeal, Carroll Hess claims that the evidence presented at trial showed that he had a secured interest in his son's truck, that the sale of the truck by the IRS to O'Dell Motors was made subject to this interest, and that therefore he had a right to possession of the truck.

 The law of many states, including Wyoming, recognizes that transactions between family members are often prompted by elements of affection that are absent in ordinary commercial transactions. *See generally* Annot., 94 A.L.R.3d 608 (1979) (unexplained transfers of property between relatives). Thus, the Wyoming Supreme Court has held that a transfer of property from a parent to a child, absent "sufficient" evidence to the contrary, is presumed to be a gift. *Kelsey v. Anderson,* 421 P.2d 163, 164 (Wyo.1966); *see In re King's Estate,* 49 Wyo. 453, 456, 57 P.2d 675, 678 (1936). Similarly, a parent's claim to a security interest in his child's property should be supported by "sufficient" evidence. Thus, in determining whether a security interest exists between a parent and child, a court should look to whether the purported interest truly secures a genuine obligation and is not simply a product of family allegiance designed to defeat the interests of third parties. *See* Wyo.Stat. § 34–21–120(a)(xxxvii) (1977) (defining a security interest as "an interest in personal property or fixtures which secures payment or performance of an obligation").

The evidence adduced at trial indicates that Carroll Hess did not receive a promissory note, a mortgage, or any other indicia of a secured loan at the time he paid off his son's outstanding debt on the truck. He and his son executed these documents only after they received notice of the IRS' intention to seize the son's property. The documents do not specify a payment sched-

ule; the father has not requested a payment; and the son has paid no more than nominal amounts on the purported loan. These facts, arising in the context of an intra-family transaction, raise serious doubts that the agreement between Carroll and Byron Hess was truly a secured loan. We therefore conclude that the district court properly considered whether Carroll Hess truly made a secured loan to his son, and that there was sufficient evidence to support its determination that he did not.

Since our conclusion as to the sufficiency of the evidence resolves the appeal, we do not pass on the alternative grounds supporting the district court judgment. In particular, we do not reach whether Wyoming law should govern the perfection of a security interest in personal property that remains in Wyoming but is covered by a certificate of title issued in another state. Wyoming statutory law provides that if personal property is covered by a certificate of title issued by another state, and that state requires indication on the certificate of any security interest in the property, then perfection is governed by the law of that state. *See* Wyo.Stat. § 34–21–903(d) (1977). We leave to the Wyoming courts the decision whether to create exceptions to this otherwise clear statutory rule.

AFFIRMED.